UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES NELSON,

             Plaintiff,

      v.                                          **DECISION AND ORDER**
                                                  **05-CV-0581**
JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

## Introduction

1.     Plaintiff James Nelson challenges an Administrative Law Judge's ("ALJ") determination that he is not entitled to a period of disability insurance benefits ("DIB") or eligibility for supplemental security income benefits ("SSI") under the Social Security Act ("the Act").  Plaintiff alleges he has been disabled since August 25, 2003, because of Crohn's disease, chronic fatigue, frequent bowel movements, arthritis in his right knee, and a seizure disorder.

## Procedural History

2.     Plaintiff filed an application for DIB on September 25, 2003, claiming he was disabled since August 25, 2003, because of the impairments listed in Section 1 above.  Plaintiff's claim for DIB was denied on December 12, 2003, and under the prototype model of handling claims without a reconsideration step, Plaintiff was permitted to appeal directly to the Administrative Law Judge (ALJ).  See 65 Fed. Reg. 81553 (Dec. 26, 2000).  Plaintiff filed a request for a hearing before an ALJ on December 18, 2003.  On January 29, 2004, Plaintiff filed an application, this time for SSI, claiming

again that he has been disabled since August 25, 2003.  Plaintiff's claim for

SSI was denied also, and he filed a request for a hearing before an ALJ on

February 9, 2004.  Pursuant to Plaintiff's request, an administrative hearing

was held before ALJ David S. Antrobus on November 16, 2004, at which time

Plaintiff and his attorney appeared.  A vocational expert was also present and

testified at the hearing.  The ALJ considered the case *de novo*, and on

December 22, 2004, issued a decision finding that Plaintiff was not disabled.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council,

and on March 31, 2005, the Appeals Council denied Plaintiff's request for

review.

      3.      On May 12, 2005, Plaintiff filed a Civil Complaint challenging

Defendant's final decision and requesting the Court to review the decision of

the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, to modify the

decision of Defendant, and grant DIB and SSI benefits to Plaintiff.[1]  The

Defendant filed an answer to Plaintiff's complaint on August 17, 2005,

requesting that the Court dismiss Plaintiff's complaint.  Plaintiff submitted a

brief on October 11, 2005, requesting the Court set aside the Commissioner's

decision, and award benefits to Plaintiff.  On November 21, 2005, Defendant

filed a Memorandum of Law in Support of the Commissioner's Motion for

Judgment on the Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of

---

[1] The ALJ's December 22, 2004, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under Northern District General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

Civil Procedure.  After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement.

## DISCUSSION

**Legal Standards and Scope of Review:**

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.       The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.       This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activi-ties.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the

claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2008 (R. at 21)[3]; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (R. at 21); (3) Plaintiff's Crohn's disease and a possible seizure disorder are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and  416.920(b) (R. at 21); (4) These

_____

[3] Citations to the underlying administrative record are designated as "R."

medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. at 21); (5) The ALJ found the Plaintiff's allegations regarding his limitations not totally credible for the reasons set forth in the body of the decision (R. at 21); (6) Plaintiff has the following residual functional capacity: exertionally, he can sit up to six hours in an eight-hour workday, stand and walk up to six hours in an eight-hour workday, and lift weights of ten pounds frequently and twenty pounds occasionally.  Nonexertionally, due to his history of a seizure disorder, he should avoid heights and moving machinery (R. at 21); (7) Plaintiff's past relevant work as a customer service representative/store clerk and assistant manager for a hardware store did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R §§ 404.1565 and 416.965) (R. at 21); (8) Plaintiff's medically determinable Crohn's disease and a possible seizure disorder do not prevent him from performing his past relevant work (R. at 21); (9) Plaintiff was not under a "disability" as defined in the Social Security Act, at anytime through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416-920(f) (R. at 22). Accordingly, the ALJ determined Plaintiff was not entitled to a period of disability, Disability Insurance Benefits, or supplemental security income payments under Sections 216(i), 223, 1602 and 1614(a)(3)(A), respectively, of the Social Security Act (R. at 22).

**Plaintiff's Allegations:**

10.     Plaintiff challenges the ALJ's determination that Plaintiff is not disabled and asserts the ALJ's decision is not supported by the substantial

evidence of record.  Specifically Plaintiff alleges that (1) the ALJ ignored the assessments of Plaintiff's treating physicians, as well as the opinion of a State agency examining physician, with regard to Plaintiff's limitations and his residual functional capacity to perform the requirements of light work[4], (2) the ALJ did not properly consider Plaintiff's subjective complaints, and (3) reversal of the ALJ's decision is mandated because persuasive proof of disability is contained in Plaintiff's record.  The Court will address each of Plaintiff's allegations in sequence.

### ALJ Ignored the Assessment of Plaintiff's Treating Physicians and the Opinion of a State agency examining physician:

11.    Plaintiff's first challenge to the ALJ's decision is that he ignored the assessment of Plaintiff's treating physicians with regard to Plaintiff's pain and limitations resulting from Crohn's disease, and the opinion of the State agency examining physician with regard to Plaintiff's fatigue and knee pain, when he determined Plaintiff had the residual functional capacity to perform his past relevant employment as a store clerk, customer service representative, or assistant store manager on a sustained basis.  See Plaintiff's Brief, p. 1-2, 6-8.  Specifically, Plaintiff claims the record does not contain substantial evidence to support the notion that Plaintiff can perform the requirements of light work. The Court disagrees with Plaintiff's contention as discussed below.

---

[4]  The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs.  See SSR 83-10.

In November 1990, and in March 1993, Plaintiff underwent bowel surgery to remove sections of his colon damaged by Crohn's disease (R. at 141, 148-155).  Plaintiff's record contains little more about his treatment or condition until March 7, 2001.  On that day, Plaintiff was examined by his treating gastroenterologist, Dr. Deborah Markham.  The doctor noted Plaintiff was "doing well and on no medications.  His weight has been stable" (R. at 147).  His weight has been stable" (R. at 147).  Dr. Markham advised Plaintiff that if he had problems, she would see him and would re-start him on medications for Crohn's disease.  Id.

On August 17, 2001, Plaintiff was again examined by Dr. Markham (R. at 146).  Plaintiff complained of abdominal pain and vomiting, and reported to the doctor he was treating himself with prednisone.  Id.  In her visit notes, Dr. Markham recorded Plaintiff had been hospitalized in April 2001 with seizures of unknown etiology.  Id.

Plaintiff was examined by Dr. Markham on October 3, 2001, when she noted his earlier gastric symptoms had mostly resolved (R. at 145).  The doctor referred Plaintiff to a family medical practitioner for regular medical care (R. at 144-145).

Plaintiff's record contains no medical information relating to the time period from October 2001 through December 2002.  On January 2, 2003, Plaintiff was examined by gastroenterologist Dr. David Heisig (R. at 143).  Plaintiff reported being ill for approximately five days with hot flashes, dizziness, and a one-time episode of vomiting.  Id.  Upon examination, the

doctor noted Plaintiff's abdomen was soft and non-tender, bowel sounds were quiet, peripheral pulses were intact, and gait and mental status were normal. Id.  The doctor recommended a change of medication from prednisone to 6-mercaptopurine, and a follow-up visit in three to four weeks.  Id.

Plaintiff was next examined by Dr. Heisig on April 11, 2003 (R. at 143).  The doctor noted Plaintiff had been scheduled for visits "multiple times and did not show up.  Id.  Upon examination, Dr. Heisig recorded Plaintiff "smells of alcohol-like beverages."  Id.  Plaintiff reported his abdomen was "generally okay" and that he was trying to taper off prednisone.  Id.  The doctor observed that Plaintiff's progress was limited by non-compliance as Plaintiff was drinking and failing to take his medications.  Id.

Plaintiff was admitted to University Hospital on September 28, 2003, with symptoms of nausea, vomiting, and seizure (R. at 210-211).  An EEG was completed on September 29, 2003, to look for signs of epilepsy as a possible cause of Plaintiff's seizures (R. at 208).  No signs of epilepsy were observed in the EEG.  Id.  Plaintiff's chest x-ray was examined and it was determined he had either pneumonia or atelectasis (R. at 206-207).  A second EEG was performed on Plaintiff on October 9, 2003 (R. at 205).  The EEG was within normal limits and showed no evidence of epilepsy.  Id.  Plaintiff was discharged from the hospital on October 13, 2003, by Dr. Philip Holtzapple (R. at 202-204).  Dr. Holtzapple's discharge diagnosis was "seizure, possibly alcohol-related" and Crohn's Disease (R. at 202).  The doctor noted Plaintiff's

Crohn's Disease "was not an issue and he appeared to be in remission" (R. at 203).

Plaintiff was examined by Dr. T. S. Ramachandran on October 30, 2003, as a follow-up after his hospitalization (R. at 199-201).  Plaintiff's neurological examination was normal (R. at 200).  His motor function examination revealed strength of 5/5 in the upper and lower extremities.  Id. Muscle tone and bulk were within normal limits.  Id.  Deep tendon reflexes were normal.  Id.  Plaintiff exhibited normal sensory function, and coordination. Id.  Plaintiff had a normal gait and was able to walk on heels and toes.  Id.

On November 14, 2003, Plaintiff was examined by Dr. Ronald Szyjlowski (R. at 197-198).  The doctor noted Plaintiff had Crohn's disease with "questionable mild activity" (R. at 198).

Plaintiff was examined again by Dr. Ramachandran on November 18, 2003 (R. at 195-196).  Plaintiff's neurological and motor examinations were normal (R. at 195).  Plaintiff reported chronic diarrhea, and the doctor recommended Plaintiff discontinue the anti-seizure medication Dilantin, and take Keppra instead.  Id.

On November 21, 2003, Plaintiff had an upper gastrointestinal study, and an examination of his small bowel (R. at 236).  The radiologist opined the study was unremarkable except for the clips from Plaintiff's prior surgeries.  Id.

Plaintiff was examined by State agency physician Dr. Berton Shayevitz on December 1, 2003 (R. at 156-160).  Dr. Shayevitz thoroughly

examined Plaintiff, and reported normal findings (R. at 157-159).  However, Plaintiff told the doctor he had been labeled "borderline retarded," and suffered significant knee pain from a childhood injury (R. at 156-157).  The doctor's impression of Plaintiff was that he had on-going symptoms from Crohn's disease, degenerative arthritis in his right knee, borderline intellectual capacity, and seizure disorder (R. at 159).  In his medical source statement, Dr. Shayevitz opined Plaintiff would be limited by his seizure disorder and Crohn's disease, and prolonged walking and walking on rough or uneven surfaces, or climbing, would also be a limitation.  Id.

On December 9, 2003, a State agency analyst reviewed Plaintiff's medical records, including the examination results and opinion of Dr. Shayevitz, and completed a Physical Residual Functional Capacity Assessment (R. at 161-166).  The State agency analyst assessed Plaintiff capable of the demands of light work (R. at 162-165).

On January 16, 2004, Plaintiff was examined by Dr. Holtzapple (R. at 193-194).  Dr. Holtzapple diagnosed Crohn's disease with possible mild activity, although the doctor noted Plaintiff said he was the best he had been in 12 years (R. at 193).

Plaintiff underwent a second radiology study of his small bowel on February 20, 2004 (R. at 237).  The radiologist opined "the remaining small bowel appears normal."  Id.

On March 3, 2004, Plaintiff underwent a radiology study of his spine and left hip to evaluate his bone mineral density (R. at 238).  Other than mild

biconcavity of the morphology of the T10 and T11 vertebrae, the study was within normal limits.  Id.

Plaintiff was examined by Dr. Szyjkowski on May 21, 2004 (R. at 191-192).  Plaintiff's physical examination was normal, and the doctor assessed Plaintiff's Crohn's disease was in remission (R. at 191).

In his challenge to the decision of the ALJ that Plaintiff was not under a disability during the relevant time frame, Plaintiff cites the opinions of his treating physicians, Doctors Ramachandran and Szyjkowski, the opinion of State agency examining physician Dr. Shayevitz, and his own self-reported symptoms of abdominal and knee pain (R. at 195, 219, and 252).

On November 14, 2003, Dr. Szyjkowski examined Plaintiff and recorded that Plaintiff reported having "his normal 6-7 bowel movements a day" (R. at 219).  However, the doctor also noted, "Overall, [Plaintiff] thinks his Crohn's disease is well-controlled."  Id.  The doctor ordered a radiology study of Plaintiff's small bowel (R. at 220).  Four days later, on November 18, 2003, Plaintiff was examined by Dr. Ramachandran (R. at 195-196).  Plaintiff reported he had chronic diarrhea (R. at 195).  The radiology study ordered by Dr. Szyjkowski of Plaintiff's small bowel was completed on November 21, 2003, and the results were normal (R. at 236).

When Plaintiff was examined by State agency physician Dr. Shayevitz on December 1, 2003, he reported fatigue from daily bouts with diarrhea (R. at 156).  However, upon examination, Plaintiff's bowel sounds were normal (R. at 158).

12

Less than two months later, on January 16, 2004, Plaintiff was examined by Dr. Holtzapple.  Plaintiff reported having "4 to 5 bowel movements per day," and that "it is the best he has been in 12 years" (R. at 193).  Plaintiff further reported to the doctor that he had "no abdominal pain, nausea, vomiting, bloating, blood in stool or intestinal manifestations of inflammatory bowel disease."  Id.  A second radiology study of Plaintiff's small bowel was completed on February 20, 2004, and the results were normal (R. at 237).  Treating physician Dr. Szyjkowski examined Plaintiff on May 21, 2004, and opined Plaintiff's Crohn's disease seemed to be "clinically in remission" (R. at 191-192).  During this examination, Plaintiff denied abdominal pain, nausea, vomiting, or bloating (R. at 191).

When Plaintiff was examined by Dr. Szyjkowski on November 14, 2003, he reported bilateral knee pain (R. at 219).  However, the doctor noted Plaintiff had no arthralgias or arthritis, and took no medication to treat joint pain.  Id.

Plaintiff reported pain in his right knee to State agency examining physician Dr. Shayevitz, but also told the doctor he could walk two miles a day at a steady pace (R. at 156).  Upon examination, the doctor noted Plaintiff needed no assistive device, could sit and rise from a chair without difficulty, and had no trouble getting on and off the examining table (R. at 157-158).  Plaintiff had full range of motion in his hips, knees, and ankles bilaterally, although the doctor reported a "crunching sensation in the right knee palpable with flexion and extension" (R. at 158).  Plaintiff's strength was 5/5 in the lower

extremities, and his joints were stable and non-tender (R. at 158-159).  The

doctor observed no redness, heat, swelling, or effusion (R. at 159).

When Plaintiff was examined by Dr. Holtzapple on October 22,

2004, he reported no joint pain at all (R. at 225).

In the opinion of the Court, the assessment of Plaintiff's State

agency examining physician, Dr. Shayevitz, is inconsistent with the record in

this case.  As set forth in the regulations, an opinion that is not based on

clinical findings will not be accorded as much weight as an opinion that is well-

supported.  See 20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); see also

Caneglosi v. Chater, No. 94 CV-2694, 1996 WL 663161, at *4 (E.D.N.Y. Nov.

5, 1996 (noting that "unsupported statements by a treating or other medical

source that the claimant is disabled are not binding on the trier of fact and do

not preclude a finding of non-disability").  It is equally well-settled that the less

consistent an opinion is with the record as a whole, the less weight it is to be

given.  See C.F.R. § 404.1527(d)(4), 416.927(d)(4).  Further, while the ALJ

was required to treat the opinion of Dr. Shayevitz as expert opinion evidence

that required evaluation and weighting in his decision, he was not required to

adopt the doctor's opinion (R. at 16-17).   See SSR 96-6p.  In the Court's view,

the somewhat restrictive assessment of Dr. Shayevitz was clearly

contradictory to the findings of several other physicians who examined and

treated Plaintiff.  As an example, when Plaintiff was examined by Dr.

Szyjkowski approximately two weeks before his examination by Dr. Shayevitz,

Plaintiff reported that overall, he thought his Crohn's disease was well-

controlled (R. at 219).  However, Dr. Szyjkowski ordered a radiology study of

Plaintiff's small bowel.  Id.  Dr. Szyjkowski also noted Plaintiff's complaint of

bilateral knee pain, but examination results revealed no arthralgias or arthritis.

Id.  The radiology study completed on November 21, 2003, revealed normal

results (R. at 236).

On December 1, 2003, Dr. Shayevitz noted Plaintiff's complaints of

fatigue and diarrhea associated with Crohn's disease, and opined Plaintiff

would be "above moderately limited" in the work world because of his need to

take care of his diarrheal episodes (R. at 159).  The doctor also noted a

"crunching sensation" in Plaintiff's right knee, and without x-rays or other tests,

diagnosed "degenerative arthritis secondary to torn meniscus in the right knee"

(R. at 158-159).  Dr. Shayevitz opined Plaintiff's right knee would be a limiting

factor for Plaintiff during climbing, or prolonged walking if Plaintiff was carrying

something, or had to walk on rough or uneven surfaces.  Id.  However,

approximately 11 months later, on October 22, 2004, Plaintiff complained of

fatigue to Dr. Holtzapple, but denied having any joint pain (R. at 225).  On May

21, 2004, Dr. Szyjkowski examined Plaintiff (R. at 223-224).  He did not

complain of joint pain or fatigue, and Dr. Szyjkowski opined Plaintiff's Crohn's

disease was in clinical remission (R. at 223).

It is clear from the ALJ's decision that the medical opinion of State

agency examining physician, Dr. Shayevitz, was considered along with the

opinions of Plaintiff's treating physicians, Doctors Markham, Heisig,

Holtzapple, Ramachandran, and Szyjkowski.  Further, the ALJ considered the

assessment of a State agency analyst who, after examining Plaintiff's medical records, completed a Physical Residual Functional Capacity Assessment and opined Plaintiff was capable of the demands of light work, as long as such work did not require exposure to heavy machinery, heights, or other hazards secondary to Plaintiff's seizure disorder (R. at 161-166).  While the opinion of a State agency analyst is not a medical source, the ALJ properly considered the State agency analyst's opinion of the severity of Plaintiff's impairment as an "other source" evaluation.  See 20 C.F.R. §§ 404.1513(d) and 416.913(d). Dr. Shayevitz's opinion simply was not supported by clinical findings or other evidence in the record.   Thus, based on the unrefuted objective findings in Plaintiff's record, as well as Plaintiff's testimony and written statements about his daily activities and limitations, the ALJ determined that Plaintiff's residual functional capacity was consistent with the demands of light work, with a nonexertional limitation to avoid exposure to heights and moving machinery secondary to Plaintiff's seizure disorder (R. at 19-21).   To determine if Plaintiff could perform any of his past relevant work, the ALJ engaged the services of a vocational expert to assess the skill level and physical demands of Plaintiff's past jobs (R. at 20-21).  The vocational expert opined that Plaintiff's past relevant employment as a customer service representative/store clerk and a hardware store assistant manager were light, skilled jobs where Plaintiff would not be exposed to heights or moving machinery (R. at 21).

Based on the foregoing, the Court finds that it was not improper for the ALJ to consider, yet afford little weight to the opinion of the State Agency

physician, Dr. Shayevitz, and to ultimately predicate his disability determination on the objective medical results and consistent medical opinions contained in the record.  It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).  Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from the State agency physician that Plaintiff would be limited in performing the physical requirements of light work.  The Court finds the ALJ afforded less weight to the assessment of Dr. Shayevitz, which was based largely on Plaintiff's subjective complaints, than he afforded the medical opinions that were consistent with the objective clinical findings in the record.

**The Administrative Law Judge Did Not Properly Consider Plaintiff's Subjective Complaints:**

12.     Plaintiff's second challenge to the ALJ's decision is that the ALJ disregarded Plaintiff's testimony regarding his pain and limitations.  See Plaintiff's Brief, p. 9.  Specifically, Plaintiff claims his work and medical history offer proof of his inability to work and entitles him to substantial credibility in his claims of overwhelming pain and limitations from his Crohn's disease, right knee arthritis, and seizure disorder.  Id.   The ALJ considered Plaintiff's subjective complaints, but noted in his decision that there were few objective findings to support Plaintiff's complaints (R. at 19-20).  Thus, the ALJ found Plaintiff's allegations of totally debilitating pain and limitations not entirely credible (R. at 19).

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered.  See Ber v. Celebrezze, 333 F.2d 923 (2d Cir. 1994).  Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony.  See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529 (b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995).  In this case, there is no question Plaintiff's Crohn's disease and seizure disorder are severe impairments, and that his right knee may bother him from time to time, but his reported symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record.  Thus, the ALJ considered Plaintiff's testimony about the timing, type and nature of the symptoms reported, the medication and other treatment Plaintiff used to alleviate his symptoms, as well as any other measures he used to relieve pain, and his activities of daily living (R. at 19-20).  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

As an example of the facts included in the ALJ's evaluation, Plaintiff gave conflicting testimony about when his last seizure occurred (R. at 19).

During his hearing before the ALJ, he first said his most recent seizure occurred in August or September 2003, and then under later questioning, said his most recent seizure occurred in the summer of 2004 (R. at 248, 253).  The ALJ also noted the record contained conflicting evidence about whether Plaintiff still took Dilantin (or any other medication) to control his seizures as he asserted during the hearing, because treating physician Dr. Ramachandran had switched Plaintiff's anti-seizure medication to Keppra on November 18, 2003 (R. at 16, 19, 195, 253).   Plaintiff also claimed during his examination with Dr. Shayevitz that his right knee pain was so disabling his knee would buckle if he tried to climb a ladder or stairs (R. at 156-157).  Yet, when questioned by the ALJ, Plaintiff merely said his knee was uncomfortable much of the time (R. at 252).  The ALJ noted Plaintiff did not take medication for the knee pain, used no cane or brace, and reported to Dr. Shayevitz that he could walk for two miles at a steady pace (R. at 19).  With respect to Plaintiff's Crohn's disease, an examination of Plaintiff by Dr. Szyjkowski in May 2004 revealed no abdominal pain and fewer bowel movements each day (R. at 223).  The doctor opined Plaintiff's medication was working well, and that his Crohn's disease was clinically in remission.  Id.

        The ALJ also examined how Plaintiff's activities of daily living were affected by his impairments, and observed from Plaintiff's written statements and hearing testimony that he engaged in wide and varied activities of daily living (R. at 19).  Such activities included laundry chores, basic housekeeping,

shopping, light yardwork, painting, watching television, reading magazines, and shoveling snow.  Id.

The ALJ's decision shows he reviewed Plaintiff's complaints of pain and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of disabling pain and other limitations.  Id.  In sum, the Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that his pain and other symptoms were disabling.  Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented an explicit summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 15-16).  See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984).

**Reversal of the Administrative Decision Is Mandated and Benefits Should Be Awarded By the Court:**

13.   Plaintiff's third challenge in this case is that reversal of the administrative decision is mandated, and benefits should be awarded by the Court, because "persuasive proof of disability" exists.  See Plaintiff's Brief, p. 10.  However, as discussed in Section 11 above, the ALJ based his decision on the substantial evidence in the record that Plaintiff's impairments, while severe, did not rise to the level of total disability within the meaning of the Act.  Because Plaintiff's evidence did not support his contention that he was totally disabled, the ALJ was required to assess the highest level of work Plaintiff

might perform, given his impairments, and if Plaintiff could return to his past relevant employment.   See SSR-96-8p.  Giving consideration to Plaintiff's nonexertional limitations caused by his seizure disorder, the ALJ determined Plaintiff retained the residual functional capacity to perform a broad range of light work.  A vocational expert testified that Plaintiff's past relevant employment as a customer service representative/store clerk, and as a hardware store assistant manager, was consistent with the requirements of light work.

        Thus, the Court finds the ALJ properly concluded that while Plaintiff provided proof that he had the severe impairments of Crohn's disease and seizure disorder, he did not provide persuasive proof of conditions so disabling that he would not be able to return to his past relevant employment.

        14.    After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and State agency medical examiner, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error and further finding that substantial evidence supports the ALJ's decision, the Court grants Defendant's Motion for Judgment on the Pleadings and denies Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:  March 5, 2008
          Syracuse, New York